UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| RYAN VICKERS | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-3521-B |
| | § | |
| IGOR LUSCHAK, FREIGHTER, INC., | § | |
| and CONVOY, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Ryan Vickers's Motion for Default Judgment. Doc. 12. For the reasons stated below, the Motion is **GRANTED in part** and **DENIED in part.**

## I.

## BACKGROUND

Ryan Vickers filed this lawsuit against Defendants on December 30, 2017. Doc. 1, Compl. Mr. Vickers alleges that Defendants failed to pay him minimum and overtime wages in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. (FLSA). *Id.* ¶ 23. On January 29, 2018, Mr. Vickers filed a Motion for Substitute Service of Process against Defendants, Doc. 5, which the Court granted, Doc. 6. Substitute service was made on all Defendants on February 3. Docs. 7–9. Defendants neither submitted an answer nor otherwise made an appearance in this case despite having been served.

On February 27, 2018, Mr. Vickers requested the Clerk enter default judgment against all Defendants, Doc. 10, and the Clerk did so the same day, Doc. 11. On May 23, 2018, Mr. Vickers

filed this Motion for Default Judgment, Doc. 12, which is ripe for review.

## II.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed. R. Civ. P. 55(b). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *Id.* First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous.*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, courts are to assume that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine "what form of relief, if any, the [plaintiff] should receive." *1998 Freightliner*, 548 F. Supp. 2d at 384. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

*A.    Whether Default Judgment is Procedurally Warranted*

The Court determines default judgment is procedurally warranted after reviewing Mr. Vickers's Motion in light of the six *Lindsey* factors. First, Defendants have not filed any responsive pleadings so there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex, Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, Defendants have not responded to any part of this proceeding since it was filed on December 30,

2017; thus, the grounds for default are "clearly established." *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding that "[d]efault judgment is appropriate if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by [the parties'] failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment'" (quoting *Cumins Ins. Soc'y, Inc. v. Billups*, No. 10-1478, 2010 WL 4384228, at *2 (D.D.C. Nov. 4, 2010))). Fourth, there is no evidence before the Court to indicate Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Mr. Vickers seeks only the relief to which he is entitled under the FLSA, mitigating the harshness of a default judgment against Defendants. Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *See id.* Therefore, the Court concludes default judgment is procedurally warranted.

B.      *Whether There is a Sufficient Basis for Judgment in the Pleadings*

The Court finds there is a sufficient basis for default judgment against Defendants in Mr. Vickers's pleadings. In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in Mr. Vickers's complaint. Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Mr. Vickers's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206.

Mr. Vickers asserts that from February 20 through February 27, 2017, and from July 17 through August 2, 2017, he was not paid any wages for the time he worked. Doc. 1, Compl. ¶ 35. He also claims that "Defendants knowingly and willfully operated their business with a policy of not paying [] the FLSA overtime rate" so he did not receive overtime pay even though he worked "one or more weeks" in excess of forty hours. *Id.* ¶¶ 20, 42.

Under the FLSA, an employer must pay employees a minimum wage per hour and must compensate an employee "for his [overtime hours] at a rate not less than one and one-half times the regular rate at which he is employed" when the employee works more than forty hours in a workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1). Mr. Vickers's allegations as to Defendants, which the Court accepts as true based on Defendants' default, establish violations of the FLSA. *See Nishimatsu Constr.*, 515 F.2d at 1206. Thus, the Court finds there is a sufficient basis for default judgment against Defendants in Mr. Vickers's pleadings.

C.   *Damages*

Mr. Vickers requests unpaid wages and liquidated damages under the FLSA. Doc. 12, Mot. Default J., 2–3. In addition, he requests attorney's fees and costs. *Id.* at 3–5. The Court considers each request in turn.

    1.   Unpaid wages

The Court denies without prejudice Mr. Vickers's request for unpaid wages in the amount of $16,349. Mr. Vickers claims he is owed $3852 in unpaid minimum wages for days he worked between February 20 through February 27, 2017, and July 17 through August 2, 2017. Doc. 12-1, Vickers Decl. ¶ 4. He arrives at this figure by multiplying the total number of hours worked (214) by his hourly wage ($18). *Id.* Mr. Vickers claims he is owed $9500 in unpaid overtime wages from November 7, 2016, through March 17, 2017. *Id.* ¶ 2. He arrives at this figure by multiplying the average number of overtime hours worked each week (50) by his total weeks of employment for that period of employment (19) by half his hourly wage ($10[1]). *Id.* During his second period of

---

[1] The Court notes that although Mr. Vickers claims he was paid $20 per hour from November 6, 2016 through March 17, 2017, Doc. 12-1, Vickers Decl., ¶ 2, he also claims he was paid $18 per hour

employment, June 5 through August 2, 2017, Mr. Vickers claims he is owed $2997 in unpaid overtime wages. *Id.* ¶ 3. He arrives at this figure using the same formula above, overtime hours per week (37) by amount of weeks (9) by half hourly rate ($9). *Id.*[2]

Mr. Vickers's requests for unpaid wages are problematic because Mr. Vickers provides nothing other than his own terse declaration to support his request. There are no time sheets, pay stubs, work logs, or other evidence to substantiate the length of his employment, his hourly rate, or the hours he worked. Though the Court accepts as true the allegations Mr. Vickers makes with respect to his underlying claim, it is nonetheless reluctant to grant his request for damages absent any supporting documents. *C.f. Carazani v. Zegarra*, No. 12–107 (RC), 2013 WL 5303492, at *7 (D.D.C. July 3, 2013) (plaintiff provided employment contract, prevailing wage determination policy guidance from Employment and Training Administration, prevailing wage rates for housekeepers in area, FLSA minimum wage for that period, and weekly tabulation of hours she worked to support her claims); *Gibbs v. Parr Mgmt., LLC*, No. 12–CV–4474, 2013 WL 2355048, at *1 (N.D. Tex. May 29, 2013) (plaintiff provided detailed affidavit listing dates and work hours to support overtime claim); *Bell v. Able Sec. & Investigations, Inc.*, No. 10–CV–1945, 2011 WL 2550846, at *1 (N.D. Tex. June 28, 2011) (plaintiff provided timekeeping records to support overtime claim); *Bullion v. Transtec Sys., Inc.*, No. 07–61463–CIV, 2008 WL 4218119, at *2 (S.D. Fla. Sept. 15, 2008) (plaintiff "submitted detailed affidavit to establish claimed damages").

---

from February 20, 2017 through February 27, 2017, *id.* ¶ 4.

[2] Mr. Vickers also seeks reimbursement for "escrow and security," but he has not pointed to any provision in the FLSA that entitles him to that reimbursement. Doc. 12, Mot. Default J., 2. Therefore, the Court **DENIES** Mr. Vickers's request for reimbursement of those funds.

In light of these deficiencies, the Court is disinclined to award damages absent a hearing or detailed affidavits establishing the necessary facts. *United Artists*, 605 F.2d at 857. Thus, the Court denies Mr. Vickers's requests for $16,349 in unpaid wages, and orders a supplemental briefing from which the Court may accurately establish the necessary facts to determine the appropriate amount Mr. Vickers is owed.

### 2. Liquidated Damages

The Court finds Mr. Vickers is entitled to liquidated damages, but denies his request until he submits a supplemental briefing. A plaintiff is entitled to liquidated damages equal to the amount of unpaid wages for willful violations of the FLSA. 29 U.S.C. §216(b)."Under the FLSA, a district court may not exercise its discretionary authority to reduce or to eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith." *Nero v. Indus. Molding Corp.,* 167 F.3d 921, 928 (5th Cir. 1999). Defendants failed to sustain their burden of showing good faith, because they failed to respond to Mr. Vickers's Complaint. Consequently, the Court finds Mr. Vickers is entitled to liquidated damages but denies his request pending the Court's receipt of a supplemental briefing.

### 3. Attorney's Fees and Costs

The Court grants Mr. Vickers's request for attorney's fees and costs. "The FLSA authorizes a prevailing party in an FLSA proceeding to recover costs and attorney's fees, and the award of attorney's fees . . . is mandatory." *Bell*, 2011 WL 2550846, at *3; *see* 29 U.S.C. § 216(b). Mr. Vickers seeks $4313.50 in attorney's fees and $885.98 in costs. Doc. 12, Mot. Default J., 7. In support of this request, Mr. Vickers presents the declaration of his attorney, Lantis Roberts, as well as the billing

records of his law firm, The Roberts Law Office. Doc. 12-1, Roberts Decl. These detail the charges and expenses incurred during this litigation.

*i. Attorney's fees*

The Fifth Circuit has described the basic procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo,* 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379–81 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. The Court will apply the lodestar method and make adjustments, if necessary, with respect to the *Johnson* factors.

The first step in the lodestar analysis requires the Court to determine the reasonable number of hours expended by Mr. Vickers's attorney on the lawsuit, as well as the reasonable hourly rate for the attorney involved. *Smith,* 478 F. App'x at 124; *Williams v. Kaufman Cnty.*, No. 3:97–CV–0875–L, 2003 WL 21755913, at *5 (N.D.Tex. July 30, 2003). Here, Mr. Vickers's attorney has provided a

time sheet and invoice indicating the amount of work performed in the case. Mr. Roberts expended 13.9 hours of his time at a rate of $300 per hour and 0.2 hours at a rate of $100 per hour. Doc. 12-1, Roberts Invoice. Additionally, a legal assistant performed 1.3 hours at a rate of $95 per hour. *Id.*

After reviewing Mr. Roberts's declaration as well as his supporting invoice, the Court finds the time he and his legal assistant expended reasonable. Nothing indicates either individual was billing for "excessive, duplicative, or inadequately documented" time. *Smith,* 478 F. App'x at 124. The Court accepts these hours as part of its lodestar calculation.

With respect to the hourly rates, the Court also finds the amounts were reasonable. Mr. Roberts has been practicing law for over eight years on similar matters Doc. 12-1, Roberts Decl. ¶ 2. In light of his declaration as well as the Court's own knowledge of rates charged for legal services by attorneys in the area with similar levels of skill, experience, and competence, the Court is comfortable using his hourly rate of $300. Also, the Court is comfortable using the rate of $95 per hour for Mr. Roberts's legal assistant.

Accordingly, the Court finds the lodestars for attorney's fees to be: (1) $4190 for Mr. Roberts ((13.9 hours x $300) plus (0.2 hours x $100)); and (2) $123.5 for his legal assistant (1.3 hours x $95). Considering the twelve *Johnson* factors described above, the Court does not think it is necessary to make any adjustment to these figures. Accordingly, Mr. Vickers's request for attorney's fees is granted in the amount of $4313.50.

    ii.  *Costs*

Lastly, a prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). In addition, pursuant to § 216(b) of the FLSA, the court may allow costs to be paid by the defendant. 29 U.S.C.

§ 216(b). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. *See* 28 U.S.C. § 1920. Here, Mr. Vickers seeks $885.98 in costs, the filing fee ($400), the service of process fees ($485), and postage ($0.98). Doc. 12-1, Roberts Decl. ¶ 6. These are all reasonable and taxable under the law. *See Bullion*, 2008 WL 4218119, at *4. Therefore, the Court grants Mr. Vickers's request for costs in the amount of $885.98.

## IV.

## CONCLUSION

For the foregoing reasons, Mr. Vickers's Motion for Default Judgment is **GRANTED in part** and **DENIED in part**. While default judgment is appropriate, the evidence before the Court is insufficient[3] to award damages that can be determined through mathematical calculation. Therefore, Mr. Vickers may supplement the record with additional evidence on or before **July 10, 2018.**

**SO ORDERED.**

SIGNED: June 19, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that the evidence supporting an award for the liquidated damages and attorney's fees is sufficient, but the Court is deferring its award of these damages until after Mr. Vickers supplements the record with evidence allowing the Court to calculate damages regarding unpaid wages.